**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TONI F. ADAMS, <br> on behalf of herself and all others <br> similarly situated <br><br>     Plaintiff, <br><br> v. <br><br> LEXISNEXIS RISK & <br> INFORMATION ANALYTICS <br> GROUP, INC., et al. <br><br>     Defendants. | Civil Action No. 08-4708 <br><br> CLASS ACTION |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS LEXISNEXIS
RISK & INFORMATION ANALYTICS GROUP, INC. AND SEISINT, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

---

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600


**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

<u>**TABLE OF CONTENTS**</u>

**TABLE OF AUTHORITIES** ........................................................................................iv

**I.**   **INTRODUCTION**..........................................................................................1

**II.**   **HISTORY OF CASE AND FACTUAL BACKGROUND**.............................2

    A. Procedural History. ...........................................................................2

    B. Background Of The Case And Allegations Of The Amended Complaint...................3

        1. Toni Adams' situation ........................................................3

        2. the Amended Complaint's detailed allegations ................5

**III.**   **ARGUMENT**.................................................................................................8

    A. The Applicable Standard: A Well Pled Complaint Need Only Allege Claims That Are Not "Speculative" To Defeat A Motion Seeking To Dismiss A Complaint.........8

    B. The Amended Complaint Sufficiently Alleges That Each Defendant Is A Consumer Reporting Agency Engaged In The Sale Of Consumer Reports. ...............10

        1. the FCRA broadly defines consumer reporting agencies and consumer reports to cover a wide range of companies ...........10

        2. the allegations of the Amended Complaint more than adequately support each of the FCRA claims Plaintiff has asserted ................13

        3. Defendants' invented reading of the FCRA belies the plain reading of the statute, applicable authority and common sense ...........14

        4. the March 13, 2008 letter Defendants sent Ms. Adams completely undermines the credibility of Defendants' coverage argument ...........20

    C. There Is Nothing To Be Inferred From The FTC Consent Decree...............22

    D. The Amended Complaint Sufficiently Alleges Willful Conduct On The Part Of The Defendants. ...........24

        1. the legal standard: reckless or conscious disregard ...........24

        2. *Safeco* affirmed the reckless disregard standard ...........26

E.  Defendants Have Waived All Further Objections Regarding The Specificity Of
The Pleadings..............................................................................................................28

1.  Plaintiff has nonetheless asserted a plausible claim relating to
Defendants' violation of the FCRA as a whole and as a procurer of
consumer reports....................................................................................29

2.  Plaintiff has also asserted plausible claims as to all Defendants.............30

3.  Plaintiff adequately alleges Defendants violated the FCRA as
resellers of consumer report data............................................................31

IV.    CONCLUSION ................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Abusaab v. Equifax Info. Servs. LLC*,
 2006 WL 1214782 (E.D. Pa., May 4, 2006) ............................................................ 26

*Al-Kidd v. Ashcroft*,
 580 F.3d 949 (9th Cir. 2009) ............................................................................... 29

*Apodaca v. Discover Fin. Servs.*,
 417 F. Supp. 2d 1220 (D.N.M. 2006) .................................................................... 26

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ................................................................................... 1, 10

*Bakker v. McKinnon*,
 152 F.3d 1007 (8th Cir. 1998) .............................................................................. 20

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 554 (2007) .................................................................................. 1, 9, 10

*Carlton v. ChoicePoint, Inc.*,
 2009 WL 4127546 (D.N.J. Nov. 23, 2009) .............................................................. 31

*Cheatham v. McCormick*,
 100 F.3d 956 (6th Cir. 1996) ............................................................................... 12

*Crane v. Trans Union, LLC*,
 282 F. Supp. 2d 311 (E.D. Pa. 2003) ..................................................................... 25

*Cushman v. Trans Union Corp.*,
 115 F.3d 220 (3d Cir. 1997) .................................................................... 24, 25, 27

*Ehrheart v. Lifetime Brands, Inc.*,
 2007 WL 2141979 (E.D. Pa., July 20, 2007) ........................................................... 24

*Evantash v. G.E. Capital Mortgage Servs., Inc.*,
 2003 WL 22844198 (E.D. Pa., Nov. 25, 2003) ........................................................ 25

*Fischl v. General Motors Acceptance Corp.*,
 708 F.2d 143 (5th Cir. 1983) ......................................................................... 13, 25

*Fowler v. UPMC Shadyside*,
 578 F.3d 203 (3d Cir. 2009) ........................................................................... 29-30

*Gillespie v. Equifax Info. Servs., LLC*,
　2008 WL 4316950 (N.D. Ill. Sept. 15, 2008) ................................................ 18, 26

*Gilmore v. Shearson/American Exp. Inc.*,
　811 F.2d 108 (2d Cir. 1987)................................................................................. 29

*Henson v. CSC Credit Servs.*,
　29 F.3d 280 (7th Cir. 1994) ................................................................................. 12

*Houghton v. New Jersey Manufacturer's Ins. Co.*,
　795 F.2d 1144 (3d Cir. 1144)............................................................................... 15

*Johnson v. Federal Express Corp.*,
　147 F. Supp. 2d 1268 (D. Ala. 2001)................................................................... 11

*Knechtel v. ChoicePoint, Inc.*,
　2009 WL 4123275 (D.N.J., Nov. 23, 2009) ........................................................ 31

*Lawrence v. Trans Union, LLC*,
　296 F. Supp. 2d 582 (E.D. Pa. 2003) ............................................................. 18, 25

*Lewis v. Ohio Professional Electronic Network LLC*,
　190 F. Supp. 2d 1049 (S.D. Ohio 2002) ............................................................. 13

*Phillips v. County of Allegheny*,
　515 F.3d 224 (3d Cir. 2008)............................................................................. 9, 10

*Phillips v. Grendahl*,
　312 F.3d 357 (8th Cir. 2002) ...................................................................... *passim*.

*Pinker v. Roche Holdings Ltd.*,
　292 F.3d 361 (3d Cir. 2002)................................................................................... 9

*Poore v. Sterling Testing Systems, Inc.*,
　410 F. Supp. 2d 557 (E.D. Ky. 2006) ............................................................. 12-13

*Premier Pork L.L.C. v. Westin, Inc.*,
　2008 WL 724352 (D.N.J., Mar. 17, 2008)....................................................... 30-31

*Procentury Ins. Co. v. Harbor House Club Condominium Ass'n, Inc.*,
　652 F. Supp. 2d 552 (D.N.J. 2009) ...................................................................... 30

*Pruco Life Ins. Co. v. Wilmington Trust Co.*,
　616 F. Supp. 2d 210 (D.R.I. 2009)....................................................................... 28

*Reynolds v. Hartford Fin. Servs. Group*,
     435 F.3d 1081 (9th Cir. 2006) ........................................................ 25, 26

*Safeco Ins. Co. of America v. Burr*,
     551 U.S. 47 (2007) ........................................................................ 25, 26

*Sampson v. Equifax Info. Servs. LLC*,
     Civ. No. 04-187 (S.D. Ga., Aug. 29, 2005) ............................................ 26

*Scheuer v. Rhodes*,
     416 U.S. 232 (1974) .............................................................................. 9

*Sheffer v. Experian Info. Solutions, Inc.*,
     2003 WL 21710573 (E.D. Pa., July 24, 2003) ....................................... 25

*Smith v. First Nat'l Bank of Atlanta*,
     837 F.2d 1575 (11th Cir. 1988) ....................................................... 10-11

*St. Paul Guardian Ins. Co. v. Johnson*,
     884 F.2d 881 (5th Cir. 1989) ................................................................ 20

*Stevenson v. TRW, Inc.*,
     987 F.2d 288 (5th Cir. 1993) ........................................................... 24, 25

*Swierkiewicz v. Sorema N. A.*,
     534 U.S. 506 (2002) .............................................................................. 9

*Umland v. PLANCO Financial Services, Inc.*,
     542 F.3d 59 (3d Cir. 2008) ..................................................................... 9

*Whitfield v. Radian Guaranty, Inc.*,
     501 F.3d 262 (3d Cir. 2007) vacated as moot, 2008 WL 2329934 (U.S. June 9, 2008) .......... 27

*Williams v. LexisNexis Risk Management Inc.*,
     2007 WL 2439463 (E.D. Va., Aug 23, 2007) ..................................... 12, 14

## STATUTES & REGULATIONS

15 U.S.C. § 1681a ...................................................................... *passim.*

15 U.S.C. § 1681b .............................................................. 11-12, 16, 17, 19

15 U.S.C. § 1681e ................................................................................ 17, 19

15 U.S.C. § 1681g ........................................................................... 17, 18, 19

15 U.S.C. § 1681h ................................................................................................ 18

15 U.S.C. § 1681i ........................................................................................... 17, 18

15 U.S.C. § 1681j ................................................................................................ 18

15 U.S.C. § 1681m ............................................................................................... 17

15 U.S.C. § 1681s-2 ............................................................................................. 17

16 C.F.R. § 603 .............................................................................................. 12-13

16 C.F.R. § 1.72 .................................................................................................. 13

## OTHER AUTHORITIES

ACCURINT.COM,
    http://www.accurint.com ........................................................................... 29

BAICKER-MCKEE, JANSESEN, CORR,
    FEDERAL CIVIL RULES HANDBOOK, 449 (2010) ......................................... 28

FTC: CARDSYSTEMS SOLUTIONS, INC. COMPLAINT,
    http://www.ftc.gov/os/caselist/0523148/052314/CardSystemscomplaint.pdf ......................... 23

FTC: CARDSYSTEMS SOLUTIONS, INC. SETTLEMENT,
    http://www.ftc.gov/opa/2006/02/cardsystems_r.shtm ............................. 23

FTC: EXPERIAN CONSUMER DIRECT "FREE CREDIT REPORTS" COMPLAINT,
    http://www.ftc.gov/os/caselist/0223263/050816comp0223263.pdf ........................ 23

FTC: MARKETER OF "FREE CREDIT REPORTS" SETTLEMENT,
    http://www.ftc.gov/opa/2005/08/consumerinfo.shtm ............................... 23

FTC: GOAL FINANCIAL LLC COMPLAINT,
    http://www.ftc.gov/os/caselist/0723013/080415complaint.pdf ................ 23

FTC: GOAL FINANCIAL LLC SETTLEMENT,
    http://www.ftc.gov/opa/2008/03/studlend.shtm ....................................... 23

FTC: IDENTITY THEFT,
    http://www.ftc.gov/bcp/edu/microsites/idtheft/ .......................................... 8

FTC: PREMIER CAPITAL LENDING, INC. COMPLAINT,
    http://www.ftc.gov/os/caselist/0723004/081206pclcmpt.pdf/ ................... 23

FTC: PREMIER CAPITAL LENDING, INC. SETTLEMENT,
    http://www.ftc.gov/opa/2008/11/pcl.shtm ............................................................................ 23

HAYNES, JUNE 9, 1998 FTC STAFF OPINION ............................................................................ 13

LEATHERS, SEPTEMBER 9, 1998 FTC STAFF OPINION ............................................................. 13

LEBLANC, JUNE 9, 1998 FTC STAFF OPINION .......................................................................... 13

SUM, SEPTEMBER 15, 1999 FTC STAFF OPINION ..................................................................... 13

VAIL, APRIL 5, 1999 FTC STAFF OPINION ............................................................................... 13

Plaintiff Toni F. Adams respectfully submits this Brief in Response and Opposition to the Motion for Judgment on the Pleadings filed by Defendants LexisNexis Risk & Information Analytics Group, Inc. and Seisint, Inc.

## I.    <u>INTRODUCTION</u>

Although styled as a Motion for Judgment on the Pleadings (the "Motion"), Defendants' Motion is in all reality an untimely and thinly-veiled second motion to dismiss. While Defendants' Answers deny the allegations of Plaintiff's Amended Complaint, and discovery is proceeding to ferret out the parties' stark factual disputes, Defendants instantly request the Court to accept those allegations as true, but find as a matter of law that Plaintiff does not state any claim against them under the FCRA. As discussed below, it is clear that, while Defendants vigorously disagree with the veracity of Plaintiff's allegations, Plaintiff has adequately and sufficiently pled a cause of action against each and every Defendant.

Substantively, the Motion is plagued by some extreme and arrogantly incorrect positions. In asking this Court to hold that Defendants are not consumer reporting agencies, and do not sell consumer reports despite the Amended Complaint's specific allegations to the contrary, Defendants urge the Court to adopt a reading of the FCRA that no court has ever made, which contradicts the plain reading of the statute, and is entirely devoid of any support other than their counsel's inventions and Venn diagram. In challenging the willfulness allegations, Defendants urge this Court to accept their mindreading of what the FTC "viewed" or "believed" in connection with a recent data breach enforcement action brought against Defendant Seisint—but there is no basis for such a position other than Defendants' conjecture. Finally, the Defendants seek to apply the U.S. Supreme Court's recent decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) in a way which would set the

pleadings standard so high that it would require a party to prove the merits of their case at the pleadings stage.  Neither decision renders such a holding.

For the reasons set forth more specifically below, Plaintiff respectfully asserts that this Honorable Court should deny the Motion outright.

## II.  HISTORY OF CASE AND FACTUAL BACKGROUND

### A.  Procedural History

This case began with the filing of a Complaint on September 18, 2008.  The Complaint alleged violations of the Fair Credit Reporting Act ("FCRA") by the three Defendants in connection with their sale of a product called an "Accurint" report, which provides substantial and detailed personal and credit information about individual consumers.

Five months later, the Defendants moved to dismiss the Complaint under Rule 12(b)(6).  (Doc. 24).  The sole basis for the motion was that the FCRA purportedly provided no basis for seeking declaratory relief.  *Id*.

On April 20, 2009, Plaintiff filed an Amended Complaint which omitted the claim for declaratory relief but in all other respects was identical to her Complaint.  (Doc. 36).  Defendants did not move to dismiss the Amended Complaint but rather filed Answers on June 1, 2009.  (Docs. 40, 41 and 42).  Notably, in their Answers, Defendants deny most of the material allegations set forth in the Amended Complaint.  Thereafter, the Court entered a Scheduling Order on July 2, 2009.

On July 14, 2009, Defendants filed a Motion to Transfer Venue of this matter to the Southern District of Florida.  Thereafter, Defendants withdrew the Motion to Transfer and Plaintiff agreed to dismiss her claims against one Defendant, Reed Elsevier, Inc., without

prejudice and with the agreed-upon proviso that Plaintiff would be permitted to reinstate those claims against Reed Elsevier.  (Doc. 51).

An Amended Scheduling Order was entered on September 21, 2009, addressing the deadlines for briefing related to Plaintiff's Motion for Class Certification.[1]  (Doc. 50).   On October 7, 2009, the Court held a telephonic status conference with counsel, following which a further Amended Scheduling Order was entered extending deadlines for pretrial factual discovery, expert reports and class certification briefing.  (Doc. 52).

On November 18, 2009, Defendants Seisint, Inc. and LexisNexis Risk & Information Analytics Group, Inc. filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c).

**B.**  **Background Of The Case And Allegations Of The Amended Complaint**

      **1.**  **Toni Adams' situation**

Plaintiff Toni F. Adams is a local nurse and victim of identity theft whose good name and credit were destroyed.  A person using Plaintiff's social security number, Plaintiff's first name, and the last name "Rugley," is believed to have incurred several debts fraudulently using Plaintiff's identity.   Although Ms. Adams repeatedly notified creditors that they opened fraudulent accounts and were reporting to the national credit bureaus fraudulent and false credit information about her, the creditors continued to hold Ms. Adams responsible for these

---

[1]      The Amended Complaint describes the class Plaintiff will seek to represent as follows:
      All persons residing in the United States of America and its Territories:
            (a)    for whom Defendants sold an Accurint report or Comprehensive Report to any debt collector, for the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case; and/or
            (b)    who paid money to Defendants for an Accurint report or Comprehensive Report when they had not obtained such a report within the preceding twelve (12) months, for the period beginning two (2) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.
Am. Compl., ¶ 29. (Doc. 36).

fraudulent transactions.  The national credit bureaus also refused to correct Ms. Adams' records over a period of years.

Then in 2005, one of the alleged creditors, GE Money Bank ("GEMB"), and its collection attorneys, Eichenbaum, Kantrowitz, Leff & Gulko, LLC (now Eichenbaum & Stylianou, LLC), wrongfully sued and obtained a wage garnishment order against Ms. Adams in New Jersey state court for one of the fraudulently incurred debts.  Despite Plaintiff's protests that she was the victim of fraud, GEMB and its collection attorneys ended up unlawfully garnishing Ms. Adams' wages from Kennedy Health Systems, her employer at the time.

Ms. Adams as such was forced to file several lawsuits against the creditors, debt collectors and national credit bureaus to restore her credit and good name.  During that litigation, Ms. Adams learned that she was sued by GEMB because of inaccurate information obtained by its collection attorneys from an "Accurint" report sold by Defendants.   Unknown to Plaintiff at the time, Defendants sold one or more Accurint reports to Eichenbaum & Stylianou, LLC, which used the report(s) in connection with the collection of the GEMB credit obligation.  The Accurint report(s) inaccurately identified Plaintiff as the debtor.

When Plaintiff learned about the Accurint report much later, she sought to review whether her Accurint report still associated her name, social security number or credit history with that of the identity thief or the fraudulent transactions.  Although consumer reports such as the Accurint report are supposed to be provided free of charge to consumers by Defendants once every twelve months pursuant to the FCRA, Defendants charged Ms. Adams $8.00 for a copy of her report when she requested one, although she had not requested or obtained one in the previous twelve months.   The report she received after payment was dated March 13, 2008.

Ms. Adams' eight-page Accurint report contained information allegedly about Ms. Adams' age, residence, social security number, date of birth, economic profile data regarding the her home and neighboring properties, bankruptcies, judgments, liens, UCC filings, professional licenses, accident history, recreational permits, and general information about Ms. Adams' assets and property.  When Ms. Adams reviewed her Accurint report, she was shocked to learn that the report was riddled with errors.  Among other errors, Plaintiff's Accurint report identifies the fraudulently incurred GEMB debt as hers, and further identifies Plaintiff as "Toni Rugley," the name used to commit the fraud.

Defendants assert on the face of the Accurint report that the report has "errors" and that the information in the report is "sometimes entered poorly, processed incorrectly, and is generally not free from defect."  Nevertheless, Defendants expressly state that they will not accept any dispute by Plaintiff and will not correct any errors in the data reported about Plaintiff on her Accurint report.  Defendants will continue, however, to sell Ms. Adams' Accurint reports to debt collectors and others.

### 2.    the Amended Complaint's detailed allegations

Based upon what happened to her, Plaintiff made detailed and specific allegations against Defendants, both as to their general practice and as to her individually, in her Amended Complaint.  The averments include the following allegations concerning the Defendants' practices and policies as to consumers in general:

- Defendants, on a nationwide basis, sell a product called an Accurint report to debt collectors, credit insurers and other entities to assist with the collection of delinquent accounts and to provide information on the location of debtors and debtors' assets.

- Accurint reports contain vast amounts of information concerning American consumers, such as a consumer's residence, age, social security number, date of birth, economic profile data regarding the consumer's home and neighboring

5

properties, and public record information such as bankruptcies, liens judgments, UCC filings, professional licenses accident history, recreational permits and general information about consumers' assets and property.

- Defendants affirmatively represent that Accurint reports are extremely useful for debt collectors to increase their collection recovery rates.

- Some of the data that Defendants sell through Accurint reports derives from data that Defendants have purchased from other consumer reporting agencies and which they then resell through the Accurint reports.

- Despite the fact that Defendants assemble and compile consumer information for sale in the form of Accurint reports to debt collectors, employers and credit insurers on a nationwide basis, Defendants will not provide consumers with a disclosure of all of the information in their files that pertain to them or the sources of the information they report, do not provide consumers with summaries of their rights under the FCRA, do not maintain any toll-free telephone numbers available to consumers for these purposes, do not investigate any consumer disputes, and do not observe any reasonable standard of accuracy regarding the information contained within the Accurint reports.

- In addition, while Defendants will provide certain information to consumers upon written request, Defendants admittedly refuse to provide consumers with all of the information that the FCRA requires, including for example, the identities of persons or entities who procured a report from the Defendants in connection with making an inquiry concerning a consumer.

- Defendants charge consumers for obtaining copies of the Accurint reports.

- Defendants do not provide consumers with the free annual disclosures required by the FCRA.

- Defendants misrepresent to consumers that they do not sell consumer reports to third parties.

Am. Compl., ¶¶ 8-18.

Further, the Amended Complaint sets out detailed and specific allegations about the

Defendants' actions directed toward the Plaintiff, Toni Adams:

- Defendants sold a grossly inaccurate Accurint report concerning Plaintiff to a third party debt collector.

- As a result of Defendants' actions, Plaintiff was unlawfully sued for a debt she did not owe.

6

- When Plaintiff went online to ascertain how to order a copy of her Accurint report, she was directed to a webpage maintained by Defendant Lexis.

- The webpage instructed her to either use an electronic web form and make a payment of $8.00 via credit card or write to "LexisNexis Consumer Access Program" at the Boca Raton, Florida address of Defendant Seisint and Defendant Lexis, that she should include a check or money order in the amount of $8.00 and a copy of her driver's license and a utility bill.

- Defendants did not provide Plaintiff with the option to obtain a copy of the Accurint report for free.

- Plaintiff ordered her Accurint report using her credit card as payment.  Defendant Lexis charged Plaintiff's credit card $8.00 on February 1, 2008.

- One of Defendants' representatives told Plaintiff that it would take 30-60 days for her to get her report.

- On March 13, 2008, Defendants Lexis and Seisint sent Plaintiff a letter (the "March 13th Letter"), along with a nine page document entitled "Comprehensive Report" that was dated March 12, 2008.

- The letterhead of the March 13th Letter set forth the names of both Defendant Lexis and Defendant Seisint, and was signed by the "LexisNexis Consumer Inquiry Department."

- Among other things, the March 13th Letter stated the following**:**

  o that it was being sent in response to Ms. Adams' request for a copy of her Accurint report;

  o that the enclosed Comprehensive Report was a compilation of public record data and non-public information;

  o that the Comprehensive Report did not contain all information about Ms. Adams that the Defendants had in their databases "relating to [her];"

  o that Accurint purchases and resells data collected by outside companies; and

  o that Defendants do not "examine or verify their data, nor will they correct or change data that is incorrect."

7

- The nine page Comprehensive Report included with the March 13th Letter stated that "the public records and commercially available data sources used on [Defendants' Accurint] reports have errors."

- The Comprehensive Report contained all sorts of information allegedly pertaining to Ms. Adams, much of which was grossly incorrect, including inaccurate information about credit card debts, liens and judgments that did not pertain to Ms. Adams, as well as names and addresses that Ms. Adams had never used.

- The Comprehensive Report did not contain or include a list of all persons and/or entities who had obtained or procured a report from Defendants about Ms. Adams.

- Because of Defendants' policy that they would refuse to accept disputes or to make corrections to their inaccurate reporting, Ms. Adams was left without a means to have the Defendants cease reporting inaccurate information about her.

Am. Compl., ¶¶ 19-28.

In view of these specific allegations detailing the Defendants' general practices and policies, as well as the details of what happened when those practices were applied to the Plaintiff, it is difficult to credit any argument that the Amended Complaint does not comply with the rules of pleading under Rule 8(a)(2).[2]

## III.    ARGUMENT

### A.    The Applicable Standard: A Well Pled Complaint Need Only Allege Claims That Are Not "Speculative" To Defeat A Motion Seeking To Dismiss A Complaint

Defendants' Motion, styled as a motion under Rule 12(c), actually seeks dismissal of all of Plaintiff's claims under the standards of a Rule 12(b) motion.  Under applicable standards, the Amended Complaint is more than sufficient to withstand such a motion.

---

[2]    For reasons they do not see fit to explain, Defendants drop a footnote in their Motion, at p. 1, to identify the several individual lawsuits referenced above that Ms. Adams brought as a result of the theft of her identity.  It is difficult to understand Defendants' purpose in mentioning those lawsuits, other than highlighting the fact that Ms. Adams encountered a number of problems as a result of identity theft, which hardly makes her unique in today's society.  *See* http:// www.ftc.gov/bcp/edu/microsites/idtheft/, the website of the Federal Trade Commission, "a one-stop national resource to learn about the crime of identity theft [which] provides detailed information to help you deter, detect, and defend against identity theft."  *Id.*

Universally recognized as a notice pleading standard, Rule 8(a)(2) calls for a plaintiff filing a complaint in the federal courts to simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) ("A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). *See also Swierkiewicz v. Sorema  N.A.*, 534 U.S. 506, 513 (2002) (calling Rule 8 a "simplified notice pleading standard.").

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Third Circuit after *Twombly* has consistently held that when considering a motion to dismiss pursuant to Rule 12(b)(6), the court shall:

> "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff" and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Umland v. PLANCO Financial Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (*quoting Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); and *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *See also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (finding *Pinker* "remains an acceptable statement of the standard" and "finding [*Twombly*] confusing"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. at 236).

To the extent *Twombly*, or more recently *Ashcroft v. Iqbal*, 129 S. Ct. 937 (2009),

impacts the standard of review of a motion seeking dismissal of claims, the opinion merely

clarifies that a complaint must "raise a right to relief above the speculative level."  *Twombly*, 550

U.S. at 555.  The Third Circuit in *Allegheny* noted that *Twombly* "'simply calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence' of the necessary element."

515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

### B.   The Amended Complaint Sufficiently Alleges That Each Defendant Is A Consumer Reporting Agency Engaged In The Sale Of Consumer Reports

#### 1.   the FCRA broadly defines consumer reporting agencies and consumer reports to cover a wide range of companies

A "consumer reporting agency" (or a "CRA"), for FCRA purposes, is defined as:

> any person[3] which, for monetary fees, dues or on a cooperative nonprofit basis,
> regularly engages in whole or in part in the practice of assembling or evaluating ...
> information on consumers[4] for the purpose of furnishing consumer reports to third
> parties, and which uses any means or facility of interstate commerce for the
> purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

Thus, an entity can be deemed a CRA if four factors are satisfied: (1) it acts in exchange

for compensation of the kind described; (2) it "regularly" "assembles" or "evaluates" information

on consumers; (3) its purpose in doing so is to furnish consumer reports; and (4) it utilizes

interstate commerce in the preparation or furnishing of a consumer report.  *Id.*  The requirement

that a CRA "assemble or evaluate" the consumer information "implies a function which involves

more than receipt and retransmission of information . . . [t]he Act is not directed to those who

---

[3]      "Person" is defined broadly by the FCRA as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

[4]      "The term 'consumer' means individual." 15 U.S.C. § 1681a(c).

supply information . . . [to] consumer reporting agencies, nor to those who are remote from those decisionmakers who rely upon consumer reports in making credit and other decisions." *Smith v. First Nat'l Bank of Atlanta,* 837 F.2d 1575 (11th Cir. 1988) (internal citations omitted).

A further requirement which must be satisfied in order to qualify as a CRA under the Act is that the individual or entity must "regularly engage, in whole or in part" in the practice of assembling or evaluating consumer information.   As the FCRA does not define the term "regularly," at least one court has looked to the Fair Debt Collection Practices Act ("FDCPA") for guidance.  *See Johnson v. Federal Express Corp.,* 147 F. Supp. 2d 1268, 1275 (D. Ala. 2001).  In *Johnson,* the court found that since FCRA and FDCPA contain similar language and are both intended to protect consumers, it would be appropriate to look to FDCPA for guidance in interpreting the provisions of FCRA.  *Id.*  Thus, *Johnson* relied upon a case in which the Sixth Circuit considered FDCPA's definition of the term "regularly."  *Id.*  Relying on Black's Law Dictionary, the Sixth Circuit defined the term as "at fixed and certain intervals, regular in point of time.  In accordance with some consistent or periodical rule of practice.  The term regular means usual or customary, normal or general...." *Id.* (citing *Schroyer v. Frankel,* 197 F.3d 1170, 1174 (6th Cir. 1999)).  Congress was concerned with consumer reporting agencies that played a "vital role in assembling and evaluating ... information on consumers."  15 U.S.C. § 1681a(3). By ensuring that FCRA's applicability is limited to those who engage in the assembling or evaluation of consumer information "in accordance with some consistent ... practice," the FCRA serves to regulate those parties whose role is "vital." *Id.*

The FCRA defines a consumer report as:

> any . . . communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is *used or expected to be used or collected in whole or in part* for the purpose of

serving as a factor in establishing the consumer's eligibility for . . . (A) [consumer] credit or insurance . . . ; (B) employment purposes; or (C) *any other purpose authorized under section 1681b.*[5]

15 U.S.C. § 1681a(d)(1)(emphasis added).

Thus, to qualify as a consumer report, the information contained therein must bear on an individual's "creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a. The communication must be (1) made by a consumer reporting agency; (2) regarding one of the specified attributes of the consumer; and (3) used, expected to be used, or collected in whole or in part, for one of the three purposes delineated in the definition. *Id. See also Cheatham v. McCormick,* 100 F.3d 956 (6th Cir. 1996).

Contrary to Defendants' interpretation of the law (discussed more fully below), the FCRA's broad definitions of "consumer reporting agency" and "consumer report" have led federal courts and the Federal Trade Commission ("FTC") to find that a wide and disparate group of companies fall within the FCRA's regulation of CRAs, *including Defendant LexisNexis itself. See, e.g., Williams v. LexisNexis Risk Management Inc.*, 2007 WL 2439463, *1-2 (E.D. Va. Aug. 23, 2007) ("**LexisNexis is a CRA** that provides a service called "Securint," which allows employers and other paying customers to research the criminal backgrounds of consumers") (emphasis added). *See also Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) (company that failed to verify accuracy of civil judgment about consumer that it sold to third party can be liable as CRA under FCRA); *Poore v. Sterling Testing Systems, Inc.,* 410 F. Supp. 2d 557, 570-71 (E.D. Ky. 2006) (Sterling Testing is CRA and "issue of whether the

---

[5]     The purposes authorized under section 1681b include furnishing a consumer report to a person which the CRA has reason to believe intends to use the information in connection with the *review or collection of an account of the consumer*.  15 U.S.C. § 1681b(a)(3) (emphasis added).

12

agency failed to follow reasonable procedures will be a jury question in the overwhelming majority of cases"); *Lewis v. Ohio Professional Electronic Network LLC*, 190 F. Supp. 2d 1049, 1058 (S.D. Ohio 2002) (finding company that regularly sells public arrest records is CRA); 16 C.F.R. pt. 600 app. § 603(d)(5)(C) (broad definition of consumer reports).  *See also* Sum, FTC Staff Opinion 9-15-99 (law firm that researches criminal records of job applicants for its clients is CRA); Vail, FTC Staff Opinion 4-5-99 (outside organization used by employer to assist in sexual harassment investigations is CRA); Leathers, FTC Staff Opinion 9-9-98 (company that provides information to fast food employers over telephone regarding prospective employees is CRA); LeBlanc, FTC Staff Opinion 6-9-98 (company that gathers criminal records for third parties is CRA); FTC Staff Opinion letter dated June 9, 1998, from W. Haynes to Richard LeBlanc. http://www.ftc.gov/os/statutes/fcra/leblanc.shtm.[6]

**2.     the allegations of the Amended Complaint more than adequately support each of the FCRA claims Plaintiff has asserted**

Here, the allegations of Plaintiff's Amended Complaint more than sufficiently support each and every claim for willful violation of the FCRA Plaintiff has asserted.

As detailed in section II. B. above, Plaintiff alleges that Defendants: (1) regularly collect, assemble and compile information regarding consumers' personal characteristics, public record history, and assets and property information; (2) for the purpose of selling this information on a nationwide basis; and (3) to the collection industry for debt collection purposes, to credit insurers for credit insurance situations, and to employers for employment screening.  Am. Compl., ¶¶ 1, 5, 8, 9, 11, and 13.  Some of the data that Defendants sell derives from data that Defendants have

---

[6]     Federal Trade Commission staff opinion letters regarding the FCRA are advisory in nature.  16 C.F.R. § 1.72.  Courts rely on such letters as persuasive authority in construing the FCRA.  *See Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 149 n.4 (5th Cir. 1983).

purchased through other CRAs and which they resell.  *Id*. at ¶ 10.  One of the information products Defendants sell is a report termed an Accurint report that Defendants sell to the debt collection industry.  *Id*. at ¶ 8.  These allegations alone provide a sufficient basis to find that the Defendants sell "consumer reports" (*see* FCRA section 1681a(d)), are "consumer reporting agencies" (section 1681a(f)),  are "consumer reporting agenc[ies] that compile[s] and maintain[s] files on consumers on a nationwide basis"(section 1681a(p)), and are "resellers" of consumer reports (section 1681a(u)).  Indeed, given these activities, it is not surprising that the Eastern District of Virginia found Defendant LexisNexis to be a CRA, and thus governed by the FCRA.  *See Williams*, 2007 WL 2439403 at *1.

### 3.      Defendants' invented reading of the FCRA belies the plain reading of the statute, applicable authority and common sense

At its core, Defendants' main argument relates to coverage.  Defendants contend that all of Plaintiff's claims should be dismissed because they are not CRAs and Accurint reports are not covered by the FCRA as consumer reports.  Despite the numerous pages that Defendants spend on developing their argument for why they are not CRAs and do not sell consumer reports, the lynchpin of their coverage argument boils down to several discrete flawed premises which are devoid of any support.

The first flawed premise appears at page 8 of Defendants' brief.  Obviously anticipating Plaintiffs' citation to the *Williams* case in which Defendants' did not contest their role as a CRA, Defendants argue that Plaintiff must allege facts that Defendants acted as CRAs "*with respect to her*."  Def. Br., at 8.  Putting aside the fact that Plaintiff more than adequately does allege that Defendants sold FCRA regulated information about her for a fee (*see* Am. Compl., ¶¶ 19-28), this remarkable contention is most notable for complete lack of authority and absence of citation.

Nowhere in the section of the brief where they advance this argument do Defendants cite any authority, whether it be caselaw or statutory text.  The reason they do not is because none exists.

As set forth above, if a plaintiff can prove that a defendant operates as a CRA, she can recover if she can prove that company violated one of the sections of the FCRA which impose duties upon CRAs.  There is no basis in the FCRA for requiring that a plaintiff additionally prove that a company otherwise functioning as a CRA, was functioning in that capacity on a particular day or with respect to her at a particular time period.[7]

The second flawed premise appears at pages 9-20 of Defendants' brief.  In that section, Defendants spend approximately 11 pages developing their novel argument that a CRA's sale of consumer information which would otherwise constitute a consumer report falls outside of the FCRA's definition of a consumer report, and thus not covered by the FCRA, when it is sold to debt collectors.  As with its first major flawed premise, this bold contention is again devoid of any citation to caselaw, other than a passing attempt to try to distinguish the only directly applicable circuit authority on the topic, *Phillips v. Grendahl*, 312 F.3d 357 (8th Cir. 2002).[8] Defendants' primary authority is a Venn diagram at page 18 prepared by its counsel which

---

[7]     Moreover, Plaintiff's allegations and injuries here stem from the fact that Defendants are CRAs.  In other words, Plaintiff is not simply identifying Defendants as CRAs and then bringing tort or employment discrimination claims.  Rather, Plaintiff is bringing FCRA claims against Defendants for facts that stem from consumer reports sold about her by Defendants in their capacity as CRAs.

[8]     Defendants try to support their argument with our Circuit's decision in *Houghton v. New Jersey Manufacturer's Ins. Co.*, 795 F.2d 1144 (3d Cir. 1986), but that case is inapposite.  In that case, the Third Circuit never made any finding regarding the use of consumer reports by debt collectors.  That case concerned a situation in which an insurance company obtained a credit report on a plaintiff in a personal injury suit, a situation clearly set forth as an FCRA statutory purpose.  Furthermore, and contrary to being helpful to the Defendants, in *Houghton*, the Third Circuit found that the report at issue was not a consumer report because it was *not* prepared for an FCRA regulated purpose.  Here, and according to Defendants' odd interpretation of the FCRA, discussed below, the Accurint report was prepared for a statutory purpose but still not a consumer report.

presents an attempted explication of the FCRA that no court or other authority has ever adopted, and which, if accepted, would turn the statute on its head.

Defendants' argument flies in the face of the FCRA's plain language.  The FCRA provides that information which is sold will constitute a consumer report if it is "used or expected to be used" or "collected in whole or in part" in connection with "any purpose authorized under section 1681b of [the FCRA]" (*i.e.* one of the FCRA's statutorily permitted uses).  15 U.S.C. § 1681a(d)(1)(C).  One of the FCRA's clear statutory purposes is use by someone who "intends to use the information in connection with a credit transaction involving the consumer…*or review or collection of an account of, the consumer".*  15 U.S.C. §1681b(a)(3)(A) (emphasis added).  *See also Phillips*, 312 F.3d at 366 ("One [FCRA-contemplated] purpose in that list is…debt collection").  Thus, information pertaining to a consumer's personal information, characteristics, assets or public record history sold by a CRA to debt collectors clearly constitutes a consumer report under the FCRA.

While it is not binding on this Court, the Eighth Circuit's decision in *Phillips* is directly on point, and is highly persuasive because its analysis is grounded in the statutory text of the FCRA.  In *Phillips*, the Eighth Circuit was presented with the question of whether consumer information that is collected for the purpose of sale to a debt collector constitutes a consumer report under the FCRA—the precise question argued in the negative by Defendants here.  In *Phillips*, the Eighth Circuit found unequivocally that it does.  The particular report at issue in that case, parallel to the Accurint report in the instant case, was termed a "Finder's Report."  *Phillips*, 312 F.3d at 366.  Because the Finder's Report was "actually intended by the credit reporting agency that prepared it" to be used for "collections professionals," it was prepared to be used for "a statutory purpose" and squarely fell within the definition of consumer report.  *Id*.  For the

same reason that the Finder's Report in *Phillips* constituted a consumer report, Defendants' Accurint reports are regulated as consumer reports under the FCRA.

Defendants argue that the only information meeting the FCRA's definition of a consumer report is information that is sold in connection with a consumer's "eligibility" or "entitlement" to something.  Def. Br. at 15-19.  While there is no question that a credit report sold to a lender in connection with a consumer's eligibility for a loan or credit card constitutes a consumer report, the FCRA's definition of consumer report regulates many other specific instances as well that have nothing to do with a consumer's eligibility or entitlement to something.  *See* 15 U.S.C. §§ 1681a(d)(1)(C) and 1681b (defining consumer report by whether it is prepared in connection with one of the numerous uses set forth in FCRA section 1681b). *See also  Phillips*, 312 F.3d at 366.

The essential and critical flaw of Defendants' novel theory of FCRA construction is it reverses the interplay between the definition of "consumer reporting agency" and "consumer report" in evaluating whether a plaintiff has stated a cause of action.  As set forth above, the FCRA regulates consumer reporting agencies, users of consumer reports and furnishers of consumer reports.  *Compare, e.g.,* sections 1681e(b), 1681g and 1681i (applying to CRAs), *with* sections 1681m (users of consumer reports) and section 1681s-2(b) (furnishers of credit).  The sections relevant to the case at bar are those that pertain to CRAs and resellers (a type of CRA).

Thus, the first question for each claim is whether Defendants are CRAs.  If so, then the Court examines the remainder of the statutory obligation to see if a violation has been alleged.  As discussed above, Plaintiff has alleged sufficiently that Defendants meet the classic definitions of CRAs based upon their alleged activities.

Perhaps the most obvious demonstration of the flaw underlying Defendants' inverted logic lies in the fact that some of the very claims Plaintiff has alleged do not require the sale of a consumer report at all.  Among others, Plaintiff has asserted claims for Defendants' violation of FCRA sections 1681g, 1681i and 1681j.  These sections regulate CRAs' conduct in terms of how they respond to and interact with consumers who contact them in connection with a file request or dispute.  None of these claims has anything to do with whether a consumer report was published or sold at a particular time period, nor require that a consumer prove that predicate act in order to recover.  15 U.S.C. 1681g, 1681h and 1681i.  *See, e.g.*, *Lawrence v. Trans Union, LLC,* 296 F. Supp. 2d 582, 590 (E.D. Pa. 2003) (1681i claims turn upon whether CRAs properly performed their investigation duties after being notified of dispute by consumer); *Gillespie v. Equifax Info. Servs., LLC*, 2008 WL 4316950, *6 (N.D. Ill. Sept. 15, 2008) (1681g claims turn upon whether a CRA, in response to a consumer's request, provided consumer with all information in its file).  Plaintiff's section 1681j claim turns upon whether Defendants charged her for a file disclosure which should have been free under the statute.  If Defendants charged her, she prevails; if not, she does not.  Like her section 1681i and 1681g claims, proof of the production or sale of a consumer report is not even arguably an element for such a claim.

If Defendants' reading of the FCRA were adopted—that a plaintiff needs to prove the sale of a consumer report "as to her" in order for the FCRA to apply at all, it would render sections 1681g, 1681i and 1681j absolutely meaningless, a statutory construction which our Circuit prohibits.

In addition, Defendants' construction would lead to an absurd result:  Defendants' position is that if the specific report sold regarding the Plaintiff was not provided for a purpose permitted under 15 U.S.C. § 1681b(a), then it is not a consumer report – there was no use of

18

same for eligibility.  Accordingly, no report sold for an otherwise unlawful purpose would ever be a consumer report, regardless of whether or not a defendant charged as a CRA was using its same collection of data and database to sell reports to other users for an FCRA permitted purpose.  It is necessary to take this point to extreme analogy.  The Court and all parties certainly know of the continuing problem of identity theft, sometimes beginning when a third party fraudster uses the personal information of a consumer to unlawfully request that victim's credit report.  Under Defendants' view of the FCRA, an acknowledged CRA such as national credit bureau Equifax could intentionally sell Plaintiff's credit report to a known identity thief so long as that person promises Equifax that he or she would not use the report for one of the lawful purposes listed at § 1681b(a).  Defendants' remarkable position is that the unlawful furnishing of the challenged report actually changes its designation from a consumer report to a non-FCRA report.  Nothing else is needed.

The present case proves the strange logic in this position.  As argued above, in *Williams*, the Defendants were challenged for their noncompliance with disclosure violations under the FCRA in their sale of public records to a prospective employer.  That product – branded "Securint" – did not differ in any material way from the Accurint report Defendants also sell and that is challenged in this case, but for one difference.  Securint reports are used for employment decisions, which even Defendants acknowledged was a purpose listed in § 1681b(a).  Thus Defendants' position is premised solely on the distinction that one report is used for FCRA purposes and the other for non-FCRA purposes.  This result would render 15 U.S.C. § 1681b(a), as well as related provisions such as § 1681e(a) (requiring a CRA to obtain a lawful purpose certification from end-users) entirely meaningless.

The Court does not need to rely on the obviousness of this position alone – every court known to counsel to have considered such an absurdity has rejected it.  In *St. Paul Guardian Ins. Co. v. Johnson*, the Fifth Circuit explained:

> Under St. Paul's reasoning, credit reports would be releasable under all circumstances. If used for non-FCRA purposes, a credit report would be releasable because it did not fall with the FCRA definition of a consumer report. If used for FCRA purposes, a credit report would likewise be releasable because it would meet the definition of a consumer report. We simply cannot conclude that Congress intended such an illogical result. Accordingly, we reject St. Paul's argument that the definition of a "consumer report" under the FCRA depends on the use to which the information contained therein is put and conclude that the purpose for which the information was collected governs whether that report is a "consumer report" under the FCRA.

884 F.2d 881 (5th Cir. 1989).   In *Bakker v. McKinnon*, the Eighth Circuit also rejected the argument, holding:

> We hold that, regardless of appellant's intended use of the credit reports, these reports are consumer reports within the meaning of the FCRA because the information contained therein was collected for a consumer purpose. Under the FCRA whether a credit report is a consumer report does not depend solely upon the ultimate use to which the information contained therein is put, but instead, it is governed by the purpose for which the information was originally collected in whole or in part by the consumer reporting agency.

152 F.3d 1007 (8th Cir. 1998).  The governance question is not how the specific report sold for the specific Plaintiff was used.  It is why the underlying data was used, expected to be used or collected.  The Amended Complaint has appropriately alleged that the data sold in Ms. Adams' Accurint report was expected to be used and/or collected in whole or in part for purposes governed by the FCRA.

> **4.      the March 13, 2008 letter Defendants sent Ms. Adams completely undermines the credibility of Defendants' coverage argument**

At footnote 11 of their Brief, Defendants reference the March 13, 2008 letter (the "March 13th Letter") that Defendants LexisNexis and Seisint sent Ms. Adams in response to her request

for her file disclosure, and which is detailed in the Amended Complaint. *See* Def. Br., at 20. Defendants assert that the March 13th Letter contradicts Plaintiff's allegations that Accurint reports are consumer reports.  In fact, the opposite is true: the March 13th Letter completely undermines Defendants' novel and newfound interpretation of the FCRA.

As set forth above, and again, without any authority whatsoever, Defendants interpret the FCRA in a way which creates a divide between consumer reports prepared in connection with a consumer's "eligibility" or "entitlement" to something, and those prepared for other purposes (*i.e.* debt collection, credit insurance, etc.).  *See* Def. Br., at 18-19.  According to Defendants' view of the world, use of a consumer report for debt collection (*i.e.* "collection of an account") is a permissible and approved statutory purpose and regulated use under the FCRA, but such information does not constitute a consumer report because it is not provided in connection with a consumer's entitlement to something.[9]

In their admissions contained in the March 13th Letter, Defendants take the completely *opposite* position.  The March 13th Letter (a form letter sent to thousands of others) states that Accurint reports may NOT be used for FCRA statutory purposes:

> Accurint data is not permitted to be used to grant or deny credit, make employment decisions, or make tenant and housing screening decisions, *or any other uses regulated by the Fair Credit Reporting Act.*

Def. Br., at Ex. A.  Thus, according to the March 13th Letter that Defendants send consumers, Accurint reports are NOT permitted for collection purposes – because that is an approved FCRA regulated purpose according to Defendants' scheme of the FCRA.   Given Defendants'

---

[9]     Defendants describe it precisely this way: "'Collection of an account' is not a purpose that defines a report as a 'consumer report,' but it is an activity in which a 'consumer report' may nonetheless be used."  Def. Br., at 19.  Again, no citation.

admissions that the Accurint reports are used for debt collection purposes, Defendants have admittedly violated the FCRA.

There is simply no straight-faced way to resolve the contradictory positions taken by the Defendants in their March 13th Letter and the instant Motion.  If anything, they reveal that the reason Defendants' FCRA coverage argument is presented without any supporting citation is because it is an after-the-fact invention to attempt to escape liability.

### C.       There Is Nothing To Be Inferred From The FTC Consent Decree

Defendants next argue that the Accurint report is not a "consumer report" allegedly because the Federal Trade Commission ("FTC") sued Seisint, Inc. and Reed Elsevier, Inc. "only" under the FTC Act, and not the FCRA, following a data breach in 2005.  *See* Def. Br., at 21, 22. With this argument Defendants are merely reading tea leaves.  There is absolutely no basis to read the FTC's enforcement action related to a 2005 data breach or the Consent Decree that followed to say anything concerning whether an Accurint report is or is not a consumer report under the FCRA.

First, the FTC enforcement action did not directly address whether an Accurint report is a consumer report, and involved no claims or issues that are even related to the ones in this case. Thus, even if the government's actions (or "omissions," as Defendants put it) in one administrative proceeding can be used as a tool in construing the FCRA by analogy, the FTC's 2005 data breach case against Seisint and Reed Elsevier simply is not analogous to the case at bar.  Nor do Defendants submit any evidence concerning the FTC's views or litigation strategy in that data breach case, or about what the FTC truly thinks of Accurint reports.  Defendants are merely speculating.

Second, the FTC's use of the FTC Act in one type of administrative proceeding is no indication of whether a particular company's business is or is not governed by *a different* federal statute in a substantially different civil action.  The FTC uses the FTC Act (and not the FCRA) regularly to combat data or security breaches.  The FTC has brought claims under the FTC Act in data breach cases against mortgage, student loan and credit card companies, among others.[10] Although there can be no doubt that these business types are commonly "furnishers" of credit data and "users" of credit reports under the FCRA, the consent orders in these cases naturally say no such thing – because the underlying disputes are data breach cases, not traditional FCRA furnisher or user cases.  No inference can rationally be made that mortgage, student loan or credit card companies cannot be governed by the FCRA because in certain data breach actions the FTC brought FTC Act, and not FCRA claims, against these entities.  By the same token, no rational inference can be reached that an Accurint report is not governed by the FCRA as a consumer report because the FTC brought an FTC Act suit against Seisint and Reed Elsevier, and not an FCRA claim, in a similar data breach matter.

---

[10]    *See*  http://www.ftc.gov/opa/2008/11/pcl.shtm  (Mortgage Company [Premier Capital Lending, Inc.] Settles Data Security Charges);  http://www.ftc.gov/os/caselist/0723004/ 081206pclcmpt.pdf  (FTC's Complaint against Premier Capital Lending);  http://www. ftc.gov/opa/2008/03/studlend.shtm (Student Lender [Goal Financial LLC] Settles FTC Charges That It Failed to Safeguard Sensitive Consumer Information and Misrepresented Its Security Practices);  http://www.ftc.gov/os/caselist/0723013/080415complaint.pdf  (FTC's Complaint against Goal Financial);  http://www.ftc.gov/opa/2006/02/cardsystems_r.shtm  (CardSystems Solutions, Inc. Settles FTC Charges: Tens of Millions of Consumer Credit and Debit Card Numbers Compromised by CardSystems Solutions, Inc. and its successor, Solidus Networks, Inc.);  http://www.ftc.gov/os/caselist/0523148/0523148CardSystemscomplaint.pdf  (FTC's Complaint against CardSystems Solutions and others).  All of these data breach cases involve FTC Act claims, and none involve FCRA claims. The FTC has even been known to sue under the FTC Act (and not the FCRA) in cases that specifically involve the sale of consumer reports by arms of the national credit reporting agencies.  *See*  http://www.ftc.gov/opa/2005/08/ consumerinfo.shtm (Marketer of "Free Credit Reports" Settles FTC Charges);  http:// www.ftc.gov/os/caselist/0223263/ 050816comp0223263.pdf (FTC's Complaint against Experian Consumer Direct under FTC Act only, and not FCRA, in case involving monetary charges for allegedly "free" credit or consumer reports).

Last, but certainly not least, if there is any reason to speculate why the FTC did not include an FCRA claim against Seisint and Reed Elsevier may very well be because the FCRA does not provide an explicit cause of action for a straightforward data breach in and of itself.

In sum, Defendants' construction of the FTC's Consent Order and actions stemming from the 2005 data breach case are illogical, speculative and offer neither binding nor persuasive legal guidance regarding the issues relevant to this case.

### D. The Amended Complaint Sufficiently Alleges Willful Conduct On The Part Of The Defendants

#### 1. the legal standard: reckless or conscious disregard

Defendants argue that the Amended Complaint should also be dismissed because Plaintiff "cannot establish that any violation of the FCRA was willful." Def. Br., at 26. But the point, rather, at this stage of the litigation, is whether Plaintiff has plausibly alleged willful conduct; establishing willfulness should await full discovery and dispositive motion briefing or trial. *Ehrheart v. Lifetime Brands, Inc*., 2007 WL 2141979, *2 (E.D. Pa., July 20, 2007) (motion to dismiss denied where complaint sufficiently alleged that defendant's violation of FCRA was either knowing or reckless, "accordingly, … the Complaint plausibly alleges that Defendant's violation … was willful").

Defendants argue for the wrong standard. The standard to allege a "willful" violation under the FCRA is not high. A plaintiff need not allege a knowing violation, but only that the defendant recklessly committed an act in reckless or conscious disregard of the rights of others. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997). This is a lower standard than the standard for willful violations or punitive damages claims under most common law torts. Although the terms "willful" or "willfully" are not defined in the FCRA, case law has held that neither malice nor evil motive need be established for a finding of a willful violation. *Id.*

24

*See also Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir. 1993) (citing *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983)).

Many courts have noted that willfulness under the FCRA is demonstrated by recklessness and not by a knowing violation of the law. *Stevenson*, 987 F.2d at 293 (*citing Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986), *cert. denied*, 483 U.S. 1022 (1987)); *Cushman*, 115 F.3d at 227. *See also Reynolds v. Hartford Fin. Servs. Group,* 435 F.3d 1081, 1097-99 (9th Cir. 2006), rev'd on other grounds by *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) (discussing meaning of "willfully" under FCRA and relying on *Cushman*). Such reckless or conscious disregard may be found when a defendant adopts a policy either knowing it to be in "contravention of the rights possessed by consumers under the FCRA or in reckless disregard for whether the policy contravenes those rights." *Cushman*, 115 F.3d at 227; *see also Reynolds,* 435 F.3d at 1097-99.

Multiple district court cases within this Circuit, examining the willfulness standard in FCRA investigation cases, have found that plaintiffs may proceed to trial with their willfulness claims where the defendant's conduct is not merely a result of a negligent act that was promptly cured. *See Sheffer v. Experian Info. Solutions, Inc.*, 2003 WL 21710573, *3 (E.D. Pa. July 24, 2003) (Schiller, J.) (defendant's conduct was willful, and not merely an "isolated instance of human error . . . promptly cure[d]") (*quoting Boris v. Choicepoint Servs.*, 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003)) (emphasis added). *See also Lawrence,* 296 F. Supp. 2d at 590 ; *Crane v. Trans Union, LLC*, 282 F. Supp. 2d 311, 321 (E.D. Pa. 2003); *Evantash v. G.E. Capital Mortgage Servs., Inc.*, 2003 WL 22844198, *8 (E.D. Pa., Nov. 25, 2003).

Chief Judge Bartle of the Eastern District of Pennsylvania also agreed with this interpretation of the willfulness standard under the FCRA when he permitted punitive damages

to go to the jury in an FCRA investigation matter. *See Abusaab v. Equifax Info. Servs. LLC*, 2006 WL 1214782 (E.D. Pa. May 4, 2006).[11]

### 2. *Safeco* **affirmed the reckless disregard standard**

The Supreme Court's 2007 decision in *Safeco* further undermines Defendants' argument. *Safeco Insurance Co. of America v. Burr,* 551 U.S. 47 (2007). In *Safeco*, the Supreme Court was asked to decide which of two conflicting standards governed FCRA willfulness claims, and it adopted the lower and less rigorous "reckless disregard" standard, which courts in this Circuit have followed for years.

Prior to *Safeco*, there was a circuit split as to what level of *scienter* should be applied in assessing FCRA willfulness claims. Several circuits had held that a knowing violation of the law (higher standard) was required for a consumer to prove willfulness under the FCRA, while others, including the Third Circuit and the Ninth Circuit, had held that "reckless disregard" (lower standard) was all that was required. In *Safeco*, the Supreme Court endorsed our Circuit's standard, and held that proof of "reckless disregard" by a defendant (*i.e.* not a knowing violation of law, as the credit industry argued) is sufficient to establish a willful violation of the FCRA. *Safeco*, 551 U.S. at 2208-2210.

---

[11]     Cases from other federal courts have also held that consumers may proceed to trial with their FCRA willfulness claims based upon conduct similar to what courts within the Third Circuit have found could constitute a willful violation of the law. *See, e.g., Reynolds*, 435 F.3d at 1097-99 (discussing meaning of "willfully" under FCRA and relying on *Cushman*); *Gillespie*, 2008 WL 4316950 at *6 (court could not conclude on summary judgment that defendant had "an objectively reasonable interpretation of a non-ambiguous statutory term"); *Apodaca v. Discover Fin. Servs.* 417 F. Supp. 2d 1220 (D.N.M. 2006) (denying defendant's motion for partial summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from improper investigation procedures); *Sampson v. Equifax Info. Servs. LLC*, Civ. No. 04-187 (S.D. Ga. Aug. 29, 2005) (denying defendant's motion for summary judgment and permitting consumer to proceed to trial with willfulness/punitive damages claim stemming from improper investigation procedures).

"Reckless disregard" is precisely the FCRA willfulness standard that this Court has followed for many years. *See Cushman*, 115 F.3d at 227. In *Safeco*, the Supreme Court cited the Third Circuit's decision in *Cushman* as the correct standard for assessing willfulness claims. *Safeco* therefore forever disposed of the argument that a consumer-plaintiff must show that a defendant knowingly violated the FCRA.

Thus, the inquiry now is not the standard for a willfulness claim, but rather when the "reckless disregard" standard is met in an FCRA case brought against a defendant. Unlike the situation in the circuits which had previously followed the knowing violation standard, this question has been thoroughly investigated and answered by the courts within the Third Circuit, as discussed and cited above. These cases also demonstrate that the reckless disregard standard is a fact-bound inquiry, a concept that the Third Circuit recently reiterated. *See Whitfield v. Radian Guaranty, Inc.*, 501 F.3d 262 (3d Cir. 2007). Indeed, in *Whitfield* the Third Circuit, in a post-*Safeco* FCRA decision, reversed a grant for summary judgment on an FCRA willfulness claim and held that the issue of willfulness was for the jury to decide. *Id.* at 271. The Third Circuit stated:

> We do not suggest that a factfinder could not or would not determine that [the defendant] did not act willfully. Instead, *we hold that whether it did so is a factual issue, not a question of law, and it therefore cannot be decided either on appeal or by the District Court as a matter of law.*

*Id.* (emphasis added); vacated as moot, 2008 WL 2329934 (U.S. June 9, 2008).

Here Plaintiff has certainly alleged that Defendants acted with reckless disregard. She alleges that, and as confirmed by the admissions in their March 13th Letter, Defendants know that their Accurint reports are inaccurate, but have a policy of not accepting disputes from consumers and will not correct those errors as a conscious practice. Am. Compl., ¶¶ 24(f), 25 and 28. Thus,

she pleads that Defendants are knowingly reporting incorrect consumer data but refuse to correct their errors.  Certainly, such allegations could lead a jury to find that Defendants act in reckless disregard of the FCRA's accuracy and dispute requirements.

### E.   Defendants Have Waived All Further Objections Regarding The Specificity Of The Pleadings

Defendants' objections regarding the specificity of the pleadings (*See* Def. Br., at Arguments IV, V, & VI) as contemplated by *Twombly* and *Iqbal* have been waived at this juncture.  Rule 12(g)(2) makes it clear that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  The section applies with full force to motions pursuant to Rule 12(c).  *See* BAICKER-MCKEE, JANSESEN, CORR, FEDERAL CIVIL RULES HANDBOOK, 449 (2010) ("A motion for judgment on the pleadings cannot assert defenses and objections that a party has waived by failing to timely assert in a preliminary Rule 12(b) motion").

Defendants have already filed a preliminary motion pursuant to Rule 12(b)(6) with respect to Plaintiff's original Complaint in which they could have and should have raised these arguments regarding the specificity of particular paragraphs or as to pleadings related to the individual Defendants.[12]  Defendants, however, consciously chose not to do so.  "The purpose behind [Rule 12(g)(2)] is obvious: it allows the Court to flush out all Rule 12 defenses at one time to avoid needless delay."  *Pruco Life Ins. Co. v. Wilmington Trust Co.*, 616 F. Supp. 2d 210, 214 (D.R.I. 2009).  Moreover, the fact that Plaintiff filed an Amended Complaint "does not automatically revive all of the defenses and objections that a defendant has waived in response to

---

[12]   Paragraphs 39(c) and (d) in the Amended Complaint are identical in substance to paragraph 39(c) of the original Complaint.

the original complaint." *See Gilmore v. Shearson/American Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987). Accordingly, Defendants' motion in this regard should be denied out of hand.

      **1.**      **plaintiff has nonetheless asserted a plausible claim relating to Defendants' violation of the FCRA as a whole and as a reseller of consumer reports**

Notwithstanding the procedural deficiencies with Defendants' arguments, Plaintiff's basis for the averments in paragraphs 39(c) and (d) are well founded. Defendants notably represent on their website that "The information provided by Accurint does not constitute a "Consumer Report" as defined in the federal Fair Credit Reporting Act." *See* http://www.accurint.com. Taking Defendants on their word, Defendants make no effort whatsoever to comply with the FCRA, making violations of each and every section of the FCRA abundantly plausible. Additionally, Plaintiff's Amended Complaint details specific factual examples of Defendants' conduct which unambiguously violates the FCRA. *See* Section II, *supra*. Plaintiff also is entitled to discover whether Defendants' conduct constitutes additional violations of the FCRA. [13]

Furthermore, Defendants' generalized dissatisfaction with the quantum of facts that Plaintiff has pled with respect to paragraph 39(d) does not advance their arguments for dismissal. A well-pled complaint in the federal court is not meant to unearth every single fact or piece of information in existence in connection with a claim. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009) ("Although [plaintiff]'s complaint is not as rich with detail as some might prefer, it need

---

[13]    Since Plaintiff has also set forth specific violations she intends to pursue, the mere inclusion of more generalized language in paragraph 39(c) is of no meaningful instance. Moreover, Plaintiff can amend with additional claims as they are discovered regardless, making Defendants' argument over the phrasing of this paragraph remarkably petty.

only set forth sufficient facts to support plausible claims.").  Defendants merely point out that they have a countervailing point of view in connection with the circumstances giving rise to these claims and numerous discovery questions that they would like answered, which is not grounds for dismissal.

### 2.    Plaintiff has also asserted plausible claims as to all Defendants

Defendants claim the Amended Complaint "makes no distinction in [the] allegations as to which defendant acted as alleged."  *See* Def. Br., Argument V, at 31.  This argument falsely suggests that Defendants are somehow separate business entities operating at arms' length from one another which played different roles in the sale of Plaintiff's information.  Through a series of corporate purchases and acquisitions, Defendants are actually a single division of Reed Elsevier, Inc. which is operated under the tradename of LexisNexis.

"[U]nsupported protestations regarding the corporate structure are insufficient to support a Rule 12(b)(6) motion in the face of a complaint that taken as true, as we must in the present procedural posture, pleads sufficient facts to establish successor corporation liability." *Procentury Ins. Co. v. Harbor House Club Condominium Ass'n, Inc.*, 652 F. Supp. 2d 552, 562 (D.N.J. 2009).  Plaintiff here has specifically pled how Seisint has come to be owned and operated by LexisNexis.  (Am. Compl. at ¶¶ 5-7).  Moreover, Defendants do not contest that Plaintiff has somehow misrepresented the current status of these business entities which would certainly be a prerequisite to raising an argument of this kind.

Nowhere has *Twombly* or *Iqbal* been interpreted to require a plaintiff to sort out the internal operations of affiliated business entities at the pleading stage.  *See id.*  ("Whether that allegation is eventually proven or legally sufficient will be left to discovery and future motion practice.").  *See also Premier Pork L.L.C. v. Westin, Inc.,* 2008 WL 724352, *4 (D.N.J. Mar. 17,

2008) (applying *Twombly* and recognizing plaintiff's claim of successorship liability in pleadings based on general allegations of successorship); *Knechtel v. ChoicePoint, Inc.*, 2009 WL 4123275 *2, N.3 (D.N.J. Nov. 23, 2009) and *Carlton v. ChoicePoint, Inc.*, 2009 WL 4127546, *2 N.3 (D.N.J. Nov. 23, 2009) (finding that general pleadings as to individual defendants alleged to be acting in concert with one another is not grounds for dismissal).  Indeed, such a requirement would be impossible for a plaintiff to comply with since it would require Plaintiff to obtain information that only Defendants possess.  Discovery on LexisNexis' and Seisint's current business structure would certainly be appropriate in the context of this litigation and may warrant amendment of named parties in the pleading at some later point consistent with discovery, but for the moment Plaintiff's pleadings satisfactorily give Defendants notice of the plausible claims asserted against them.

### 3.    Plaintiff adequately alleges Defendants violated the FCRA as resellers of consumer report data

Last, Defendants argue that Plaintiff's allegations that they violated the FCRA as procurers for resale (termed "resellers" in the credit industry) are insufficient to state a claim. Def. Br. at 33.  This argument can be quickly disposed of by reference to the Amended Complaint and Defendants' own admissions.

Plaintiff alleges that some of the data that Defendants sell through their Accurint reports is derived from data that they have purchased from other CRAs.  Am. Compl., ¶ 10.  Defendants claim that this is insufficient to find that they act as resellers of consumer report data.  But what Defendants either misapprehend or purposely ignore is that Plaintiff's reseller allegations are based at least in part upon their own admissions.  As referenced in her Amended Complaint at paragraph 24(e), the March 13th Letter that Defendants sent Plaintiff states that "Accurint *purchases and resells data collected by outside companies, which cover public records…*".  Def.

Br. at Ex. A (emphasis added).  The statute provides that companies which sell public records

data nationwide are CRAs.  15 U.S.C. §1681a(p).  Certainly, these allegations and Defendants'

own admissions state a claim that they act as resellers of consumer report data.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff Toni F. Adams respectfully requests that the

Defendants' Motion for Judgment on the Pleadings be denied.

Respectfully Submitted,

**FRANCIS & MAILMAN, P.C.**

BY:    <u>*/s/ James A. Francis*   </u>
JAMES A. FRANCIS
JOHN SOUMILAS
GREGORY GORSKI
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

Attorneys for Plaintiff and the Class

Dated:  January 8, 2010